UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SCOTT LAINE,                                        :
                                                    :
                         Plaintiff,           :
                                                    :       09 CV 3057(HB)
        - against -                               :
                                                    :       OPINION &
                                                    :       ORDER
KATHERINE E. PRIDE,                                 :
                                                    :
                        Defendant.           :
                                                    :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       This case presents a tangle of issues surrounding the artwork and death of the fashion illustrator Richard Ely ("Ely").  Plaintiff Scott Laine ("Plaintiff" or "Laine") claims that Ely sought her out to "enhance his legacy" and "help him return to active, productive, creative work."  Second Am. Compl. ¶ 4 ("SAC").  As compensation for this endeavor, Laine sought the transfer of all of Ely's works remaining in his possession, and to effectuate this purpose documents were executed for the sale and transfer in May 2008.  Most of the materials remained in Ely's physical possession at his home/studio, but Laine was given access to catalogue and prepare the works for show or sale.  Less than a year later, Ely suffered an accidental fall and passed away.  After Ely's death, Defendant Katherine E. Pride ("Defendant" or "Pride"), the daughter of Ely as well as the executor of his estate, asserted that Plaintiff did not have any right to Ely's art, rather the work was all part of his estate.  Laine claims Pride physically precluded her from further access to the artwork, unlawfully authorized the reproduction of the artwork in violation of a copyright she holds in the materials, and spread false claims to members of the art profession that Laine had forged the transfer and sale documents.  As a result, Laine brought suit against Pride for copyright infringement, tortuous interference, conversion, and defamation.  Before this Court is Defendant's motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim.  For the reasons that follow, Defendant's motion to dismiss is GRANTED.  The dismissal

1

is WITHOUT PREJUDICE and Plaintiff may re-file her federal claim if the contract dispute at the heart of this case is resolved by the New York Surrogate Court in her favor.

**BACKGROUND**

Richard Ely is a moderately famous artist, whose main focus was on fashion illustrations. At least fifty of Ely's works are a part of the permanent collection of the Museum of Fine Arts in Boston ("MFA").  *See* SAC ¶ 16.  According to the MFA, Ely began his career sketching apparel for small women's specialty shops in the 1940s.  By the mid-1950s, Ely was a sought-after illustrator and by the 1960s he worked for large department stores like Lord & Taylor, as well as for Harpers and Queen magazine.  In the 1970s he shifted his focus to celebrity portraits, focusing on subjects in the art and theatre worlds.[1]  Ely was also an Adjunct Assistant Professor of Illustration at the Fashion Institute of Technology, State University of New York ("FIT").  *See* Fashion Institute of Technology, Faculty, http://www.fitnyc.edu/2413.asp (last visited December 12, 2009).  Ely maintained a studio at his residence in New York City, to work and house some of his personal collection.  *See* SAC ¶ 17.  Beginning in 2007 and 2008, Ely allegedly took steps to return to work, and sell some of his existing works.  *Id.* ¶ 18.  It is for these purposes that the artist turned to Laine.

Laine states that she has "more than 20 years experience in the fashion and art world as a model, designer, consultant, and lecturer."  SAC ¶ 10.  She claims to have been "friends and colleagues" with Ely for "more than a decade."  *Id.* ¶ 19.  Plaintiff was interested in Ely's proposal, but believed it to be a significant task which would take "considerable amount of time and effort over a period of several years" that included "assessing and cataloguing the Ely Collection and taking steps to promote Ely's name and reputation in the art world."  *Id.* ¶ 20.  According to Laine, Ely offered to "turn over ownership of all of his works" as an inducement to perform these tasks.  *Id.* ¶ 21.  Laine agreed, and met with Ely and an attorney in New York to discuss the details of the transaction.  She maintains that she also spoke to Ely's wife and daughter (Defendant Pride), and heard no objections from either of them.  *Id.* ¶ 21-22.  To consummate the transfer, on or about May 23, 2008, Plaintiff and Ely signed and notarized two

---

[1] The Museum of Fine Art's website contains further biographical information and images of Richard Ely's artwork. *See* Museum of Fine Arts, Boston, Collection Tours: Fashion Illustration from the 1940s-80s, http://mfa.org/tours/package.asp?key=957 (Image #4, "Woman with Yves Saint Laurent Opium Fragrance") (last visited December 12, 2009).

2

documents: a "Grant of Full Authority" and a "Bill of Sale." *See* SAC, Ex. 1 and 2 (collectively the "Transfer Documents").  The "Grant of Full Authority" provided Laine with "absolute, exclusive and full authority, in my lifetime and after my demise, to sell, lease and in any other manner dispose of and exploit my artistic creations…" *See* SAC, Ex. 1.  The "Bill of Sale" purports to "sell, transfer, grant and assign…all right title and interest of [Ely]" in his personal collection of artwork to Laine for one dollar in consideration, five-thousand dollars consideration previously received, and "50% of any money" received by Laine should she sell any artwork. *See* SAC, Ex. 2.  The document further states that the "50% sale proceeds" portion of the consideration "shall not inure to the benefit of [Ely's] heirs or estate" in the event of his death, "it being expressly understood that the sale herein is final and complete as of the date-March 1, 2008." *Id.*  Despite the purported sale and transfer in ownership, the majority of Ely's collection remained at his apartment studio so that Plaintiff could examine and catalogue the materials with Ely's assistance and input. *See* SAC ¶ 27.  Laine states that she was given a key and "free access," and spent "considerable time" working on the project at his studio/apartment. *Id.* at ¶ 28.

On February 12, 2009, Ely was severely injured in an accidental fall, and died shortly thereafter. *See* SAC ¶ 29.  Following his death, Ely's daughter, Defendant Pride, took actions which are the source of plaintiff's lawsuit.  According to Laine, Defendant barred Plaintiff's entry to Ely's studio by changing the locks and directing the doorman not to permit Laine any access.  Pride is also alleged to have removed items from the studio as well as from Ely's office at FIT, which are part of the collection Ely transferred to Plaintiff. *See* SAC ¶¶ 30-31.  Laine also claims that Defendant authorized an FIT professor, Peter Emmerich, to "make copies of Ely's works that are covered by Laine's copyright registration." *Id.* ¶¶ 34-38.  Finally, Plaintiff alleges that Defendant told certain specifically named individuals involved in the art world and other "fashion industry participants" that Plaintiff forged the Transfer Documents and that she had no rights to any of Ely's works. *Id.*  ¶¶ 40-43, 45-46.  Based on these allegations, Plaintiff brought suit for copyright infringement and New York state common law claims of defamation, tortuous interference, and conversion. *Id.* ¶¶ 33-50.

Pride disputes Laine's ownership of the art collection.  She claims that "[a]ll of Mr. Ely's work, except those he had gifted to his wife, daughter, grandchildren and friends, remained in Mr. Ely's possession in his apartment."  Def.'s Br. in Supp. of Mot. to Dismiss, at 2. ("Def.'s

3

Br."). Defendant further states that, after the May 23, 2008 date noted in both Transfer Documents, Ely in "letters and diary entries…referred to his art as his possession and occasionally, to [P]laintiff as his business agent." *Id.* Ely had a will, which was admitted to probate to the Surrogate's Court of the State of New York, County of New York, on March 6, 2009. *Id.* His will, according to Pride, bequeaths all property to his wife and named Pride as executor. *Id.* The Surrogate responsible for the administration of Ely's estate has already sent them to mediation to fashion, if possible, a preliminary settlement of the dispute over the artwork.

Defendant moves to dismiss Plaintiff's action on a variety of grounds. First, she argues that this Court lacks subject matter jurisdiction because (1) this case falls within the "probate exception" to federal jurisdiction; (2) "federal question" jurisdiction is absent due to (a) Plaintiff's untimely registration of copyright and (b) her failure to sufficiently demonstrate "arising under" copyright jurisdiction; (3) Defendant in her capacity as executor of Ely' estate is a necessary party and her joinder in that role destroys complete diversity; and (4) there is no supplemental jurisdiction over the state law claims because all other grounds for subject matter jurisdiction fail. Second, Defendant moves to dismiss for failure to state a claim because (1) Plaintiff's copyright infringement claim fails to specifically allege any actual infringement; (2) her defamation claim fails to assert "special damages" and does not make sufficient factual allegations to merit a "slander per se" claim that would obviate the need for special damages; and (3) her tortious interference and conversion claims fail because they require proof of a valid contract.

## LEGAL STANDARD

<u>Subject Matter Jurisdiction</u>

The existence of subject matter jurisdiction is "a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation and citation omitted). To resolve a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *See Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004); *see also Arista Records LLC v. Usenet.com.*,

4

*Inc.*, No. 07 Civ. 8822(HB), 2008 WL 4974823, at *2 (S.D.N.Y. Nov. 24, 2008). Still, Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Morrison*, 547 F.3d at 170. A court may consider evidence outside the pleadings on a 12(b)(1) motion to dismiss. *Id.*; *see also Caldwell v. Rudnick*, No. 05 Civ. 7382(NRB), 2006 WL 2109454, at *2 (S.D.N.Y. July 26, 2006) (application of subject matter jurisdiction standard to copyright infringement claims).

<u>Failure to State a Claim</u>

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.12(b)(6). To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950. As with a subject matter jurisdiction challenge, a court must accept as true all of the factual allegations in the plaintiff's complaint. *See, e.g., Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009). Here, a court may consider the complaint as well as "any written instrument attached to [the complaint] as an exhibit…any statements or documents incorporated in it by reference…and any document not incorporated but that is, nevertheless, 'integral' to the complaint because the complaint relies heavily upon its terms and effect." *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (internal quotations and citations omitted).

## DISCUSSION

**Federal Question (Copyright) Jurisdiction**

<u>Failure to Register the Copyright Prior to Instituting an Infringement Claim</u>

Defendant argues that Plaintiff's complaint should be dismissed for lack of "federal question" subject matter jurisdiction. More specifically, she claims that (1) Plaintiff failed to timely register her copyright prior to instituting this suit and therefore cannot maintain her copyright infringement claim and (2) regardless of registration, her claim does not sufficiently

allege facts to find a basis for jurisdiction "arising under" the Copyright Act. Both arguments fail.

Pursuant to federal statute, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). A district court lacks subject matter jurisdiction over an infringement claim based on unregistered materials. *See In re Literary Works in Electronic Databases Copyright Litig.*, 509 F.3d 116, 122 (2d Cir. 1007) (noting that the Circuit has twice "squarely held" that this requirement is jurisdictional); *Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 332 (S.D.N.Y. 2003). As such, a party typically cannot bring an action in federal court without first filing and receiving a federally-registered copyright. *See In re Literary Works*, 509 F.3d at 125 n.5 ("registration or preregistration must occur before a plaintiff can assert a valid claim"). However, where a plaintiff files an infringement suit prior to registration of the copyright at issue, district courts have discretion to allow a plaintiff to amend their complaint if they obtain registration after the suit's initiation. *See, e.g., Country Road Music, Inc.*, 279 F. Supp. 2d at 332; *J. Racenstein & Co., Inc. v. Wallace*, No. 96 CIV. 9222(TPG), 1997 WL 605107, at *1 (S.D.N.Y. Oct. 1, 1997) ("Where an action is commenced without registration being effected, the defect can be cured by subsequent registration, and an appropriate amendment to the complaint may be made to provide the necessary basis for subject matter jurisdiction."). For example, in *Demetriades v. Kaufmann*, plaintiffs mailed their application, but had not received a certificate of registration by the time they filed the complaint; the court determined that it had jurisdiction based on the amended complaint which incorporated the late-received registration. *See* 680 F. Supp. 658, 661 (S.D.N.Y. 1988).

In the present action, Plaintiff initially filed a complaint *pro se* in March 2009; it was subsequently amended in April by counsel that now represents her. Neither the original nor amended complaint asserts a copyright infringement claim, instead reliance is placed solely on New York state law claims and diversity jurisdiction. On May 28, 2009, Plaintiff filed a Second Amended Complaint where for the first time she alleged a copyright infringement claim, and attached to the complaint a copyright certificate of registration dated May 19, 2009. *See* SAC, Exhibit 3. I find nothing wrong with this chain of events and see no reason to dismiss the Complaint for failure to timely register the copyright. Plaintiff never made a copyright

infringement claim prior to obtaining registration.  To the contrary, she only added that claim after the registration was received.  The fact that this did not occur until the Second Amended Complaint, and according to Defendant only after Plaintiff was informed of a potential challenge to diversity jurisdiction, is consonant with my individual practices that allow the filing of an amended complaint in response to a motion to dismiss.  Indeed, Plaintiff did not even burden Defendant by forcing them to make the motion prior to her amendment of the complaint.  Further, Defendant fails to allege any prejudice caused by these actions.  The Court's jurisdiction is not imperiled by the subsequent amendment of the complaint to add a copyright infringement claim based on a valid copyright registration.

### "Arising Under" Copyright Jurisdiction

Defendant's second argument regarding federal question jurisdiction is that Plaintiff fails to satisfy the "arising under" standard for jurisdiction under the Copyright Act.  This argument is without merit.  28 U.S.C. § 1338(a) provides district courts with original and exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  Not every complaint that refers to the Copyright Act arises under it for jurisdictional purposes.  *See Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000).  Pursuant to the "*T.B Harms* Test" created by Judge Friendly, a suit arises under the Copyright Act's jurisdiction when (1) "[t]he complaint is for a remedy expressly granted by the Act (e.g. a suit for infringement…)" or (2) " [t]he complaint…asserts a claim requiring construction of the Act."  *Id.* at 349 (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964)).  The Second Circuit is clear as to the meaning of the test: "If the complaint alleges copyright infringement or seeks an injunction [or some other remedy] under the Copyright Act, under *T.B. Harms* the federal court has jurisdiction."  *Bassett*, 204 F.3d at 349, 355.  Indeed, district courts should not attempt to "look beyond the complaint" to determine whether the plaintiff is "really concerned" about copyright.  *Id.* at 352-53 (finding the test which allowed this sort of discretion to be "unworkable").  Even where a court dismisses a copyright action for failure to state a claim pursuant to Rule 12(b)(6), the basic claim can still be sufficient to support jurisdiction under the act.  *See Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) (finding adequate jurisdiction simply because the complaint alleged copyright infringement, but ultimately dismissing it for failure to state a claim).

Defendant correctly notes that the Second Circuit has considered "factually related copyright and contract claims" to be "among the knottiest procedural problems in copyright jurisprudence." *See Bassett*, 204 F.3d at 347 (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A]. at 12-4 (1999)). Unfortunately for Defendant, this simply is not the issue before this court. The *Bassett* Court made this statement with regard to situations where the alleged infringement was directly related to the alleged breach of contract. In *Bassett*, for example, the defendant had a license to exploit the plaintiff's copyright, but plaintiff sued for infringement because he alleged that defendant had breached the terms of the licensing agreement. *See Bassett*, 204 F.3d at 345-46. No such "knotty" question is presented here. Laine is simply suing Pride for copyright infringement and various tort claims - and does not allege any contract claims. The fact that Defendant is skeptical of the validity of the documents which transferred the artwork does not by some legal alchemy turn Plaintiff's straightforward copyright claim into a tangled question about whether this is really a copyright or contract claim. Whether Plaintiff validly obtained possession and property rights in the artwork is a factually separate potential affirmative defense, and does not impact the straightforward *T.B. Harms* test for jurisdiction.

Plaintiff alleges copyright infringement and seeks remedies, such as an injunction, expressly granted by the Copyright Act. *See* SAC ¶¶ 33-38, D. This is a sufficient basis for jurisdiction under the Copyright Act.

**The Substantive Copyright Claim**

It is here, however, that Plaintiff begins her slide down the slippery slope of defeat. Laine claims that Pride infringed her copyright in the Ely art collection because she "has purported to authorize…Professor Peter Emmerich…to make copies of Ely's works that are covered by Laine's copyright registration." SAC ¶ 36. She further alleges that "Emmerich has infringed the copyrights in Ely works and refused to cease his infringing conduct." *Id.* Plaintiff's allegations are insufficient to support a copyright infringement claim.

The Copyright Act provides, in part, that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following…reproduce the copyrighted work in copies…distribute copies…of the copyrighted work." 17 U.S.C. § 106. A copyright infringement claim must allege (1) the specific original works subject to the claim; (2) that the

8

plaintiff owns the copyright; (3) that copyrights have been registered pursuant to the statute; and (4) the acts and time that the defendant infringed the copyright. *See Kelly v. L.L. Cool J*, 145 F.R.D. 32, 26 (S.D.N.Y. 1992). Plaintiff's downfall lies in her inability to adequately allege an infringing act. Her argument appears to be either that (1) Defendant directly infringed her copyright by authorizing another to copy certain covered artwork or (2) Defendant is a contributory infringer by providing Professor Emmerich with the ability to copy the materials. In neither her complaint nor her moving papers does Plaintiff point to the type of infringement – direct or contributory – for which Defendant is allegedly responsible. *See generally* 3 M. Nimmer & D. Nimmer, Nimmer on Copyright, § 12.04[D] (2005) (explaining difference between direct and contributory infringement). No matter which way Laine styles her claim however, it fails as a matter of law.

Plaintiff argues that Defendant committed an infringing act when she "purported to authorize" Professor Emmerich to make copies because the Copyright Act states that a copyright holder has "exclusive rights to do…and **to authorize**." *See* Pl.'s Opp. Br. at 7 (emphasis in brief); 17 U.S.C. § 106. If Plaintiff believes this is sufficient to allege a direct infringement of her copyright, she is incorrect. Courts in this circuit and elsewhere have clearly held that the language "to authorize" does not create an independent, direct claim of copyright infringement. "17 U.S.C. § 106 does not create an infringeable right of authorization independent of infringement of one of the specific enumerated rights set forth in that section." *National Football League v. PrimeTime 24 Joint Venture*, No. 98 CIV. 3778(LMM), 1999 WL 163181, at *4 (S.D.N.Y. Mar. 24, 1999); *Elektra Entertainment Group, Inc. v. Barker*, 551 F.Supp.2d 234, 246 (S.D.N.Y. 2008) (agreeing with *National Football League* analysis); *see also Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994). The "to authorize" language was added by Congress solely for the purpose of making it expressly clear that a copyright holder can assert contributory infringement as well as direct infringement. The House Report is unambiguous in this respect: "Use of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 61, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5674. "The only rights granted to the copyright holder by the statute are found in the numbered sub-sections of Section 106, and unless one of those rights is infringed, the copyright holder has no recourse in law under Section 106." *Elektra Entertainment Group*, 551 F.Supp.2d at 246. Plaintiff's complaint fails to allege a direct

infringement claim because she does not allege that Defendant committed any acts in the enumerated paragraphs of the Copyright Act, such as reproduction or distribution, and because "to authorize" in of itself does not create a direct infringement claim. *See Elektra Entertainment Group*, 551 F.Supp.2d at 246 ("Plaintiffs have alleged direct infringement in their Complaint, not contributory infringement, so MPAA's argument based on the statute's inclusion of the word "authorize" is misplaced.").

Even if I were to construe Plaintiff's complaint to allege contributory infringement on the part of the Defendant, the claim must still fail because she does not allege any actual direct infringement by another party. "In order to establish liability for contributory or vicarious copyright infringement, a plaintiff must first prove that direct infringement of its works occurred by showing that it owned a valid copyright and unauthorized infringement of its protected material occurred." *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV. 4660(SHS), 2002 WL 1997918, at *3 (S.D.N.Y. Aug. 29, 2002) (citing *Sony Corp. of Amer. v. Universal City Studios,* 464 U.S. 417, 434 (1984); *Feist Publ'ns v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir.1992)). While one could construe Plaintiff's claim to allege contributory infringement on the part of Pride, she fails to allege that Professor Emmerich or some other unnamed party directly infringed on her copyright by some act of reproduction or otherwise. All Plaintiff claims is that the Professor was authorized "to make copies," and that he "has infringed the copyrights in Ely works and refused to cease his infringing conduct." SAC ¶ 36. Laine does not factually allege that Professor Emmerich actually copied any of the artwork or performed any other act that would violate her enumerated rights under § 106 of the statute. The assertion that he "infringed the copyrights" is the sort of fact-free pleading that provides no notice of the factual underpinnings of the lawsuit, and which *Twombly* sought to curb when they retired the "no set of facts" language in *Conley v. Gibson*. *See Twombly*, 550 U.S. at 563 ("[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement.").

Laine has failed to sufficiently allege how Pride infringed her copyright in the art collection. She has failed to allege a direct infringement claim because "to authorize" is not itself a direct infringement of copyright, and she has failed to allege a contributory infringement claim because she has not stated any facts that could lead this court to reasonably conclude that Professor Emmerich directly infringed the copyright with Pride's assistance. As a result, her

10

copyright infringement claim must be dismissed.  Since Plaintiff fails to adequately state a copyright claim under Rule 12(b)(6), she cannot rely on copyright jurisdiction to support her remaining claims.

**Diversity Jurisdiction**

Since Plaintiff's copyright infringement claim must be dismissed for failure to state a claim, her remaining state law claims are likely to survive only if they are based on diversity jurisdiction.  District courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000…and is between…citizens of different states."  28 U.S.C. § 1332(a)(1).  This further requires "complete diversity," that all plaintiffs possess state citizenship diverse from all defendants.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-54 (2005).  "Furthermore, it is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete."  *Herrick Co., Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 322-23 (2d Cir. 2001) (internal quotations and citations removed).  "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile."  *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).  Plaintiff alleges that her domicile is in New York, and Defendant's is in Pennsylvania.  *See* SAC ¶¶ 10-11.  On its face, the complaint sufficiently alleges diversity jurisdiction.  However, Defendant claims that Laine has failed to properly join required parties to this lawsuit, namely the Ely Estate in the form of the estate executor.  Her argument is that, by operation of New York Arts & Cultural Affairs Law, the sale and transfer of Ely's art collection to Laine actually created a "consignment" rather than a true sale.  *See* N.Y. Arts & Cult. Aff. Law § 12.01(1)(a) (McKinney 2009) ("Whenever an artist…delivers or causes to be delivered a work of fine art…of his own creation to an art merchant for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof…establishes a consignor/consignee relationship.").  As a result, Ely, and now Ely's estate, remained the true owner of the artwork.  According to Pride, "title to [the] art and right to possession of [the] art remained with the Decedent" and "[a]t Decedent's death, title of his artworks passed to his Estate, not Plaintiff."  Def.'s Br. at 5.  Defendant asserts that she needs to be joined in her

11

capacity as executor of the estate to protect its interest in the artwork, and that this joinder would destroy complete diversity.

Joinder of Required Parties

Rule 19 of the Federal Rules of Civil Procedure provides that "required parties" must be joined if "feasible." Fed.R.Civ.P. 19(a). A person is a required party if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Id.* Whether a particular party must be joined out of necessity requires a fact-intensive determination. *See* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1604, *available at* FPP § 4425 (Westlaw). "Joinder of a party is not feasible where the court's subject matter jurisdiction rests on diversity of citizenship and joining the party to the action would destroy complete diversity." *LoCurto v. LoCurto*, No. 07 Civ. 8238(NRB), 2008 WL 4410091, at *4 (S.D.N.Y. Sept. 25, 2008). If joinder of the party is not feasible, then the court must consider whether in "equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b). The legal representative of an estate is deemed to be a citizen of the same state as the decedent. *See* 28 U.S.C. § 1332(c)(2). In this case, Ely was domiciled in New York. *See* SAC ¶ 17. Since Plaintiff is also domiciled in New York, if Pride must be joined in her capacity as executor of the estate, then complete diversity will be destroyed.

The facts of this case present a difficult joinder question. On the one hand, Plaintiff has provided prima facie evidence of a valid contract through the Transfer Documents such that, for all intents and purposes at this stage of litigation, the artwork is her property. A sale of goods, including artwork, is governed by the Uniform Commercial Code ("U.C.C.") as adopted under New York law. *See* N.Y. U.C.C. § 2-102, 2-105 (McKinney 2009) (applicability to "transfer of goods" and definition of "goods"); *Rosenfeld v. Basquiat*, 78 F.3d 84, 93 (2d Cir. 1996) (sale of three paintings from artist to another governed by N.Y. U.C.C.); *Weil v. Murray*, 161 F. Supp. 2d 250, 255 n.4 (N.Y. U.C.C. governs sale of art). "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes

the existence of such a contract." N.Y. U.C.C. §2-204. A review of the Transfer Documents attached to the Complaint indicates all the essential elements of a typical contract. Other than her insistence that it actually creates a consignment agreement under New York law – a fact-intensive question that cannot be resolved on a motion to dismiss – Defendant provides no facts to the contrary regarding contract validity. Since Plaintiff provides prima facie evidence of a valid contract, the artwork at this stage of the litigation is treated as property of the Plaintiff, not of Ely's estate. "[U]less and until some judicial authority accepts [Defendant's] objections to the validity of the [Transfer Documents], the [p]roperty is not part of [Ely's] estate." *Abercrombie v. Andrews College*, 438 F. Supp. 2d 243, 255 (S.D.N.Y. 2006). As such, Plaintiff's claims do not directly implicate the rights of Ely's estate. All of her claims – conversion, defamation, and tortious interference – are directed against the Defendant and, should Plaintiff succeed, complete relief could be accorded. Defendant could pay the damages and be required to turn over the artwork over which she apparently controls access. In other words, the matter may be resolved without the estate's joinder. In addition, as a practical matter, Pride-as-individual can make the same affirmative defenses against Laine's claims as Pride-as-executor could make. Defendant fails to point to any arguments that she could make as executor that she could not make in her individual capacity.

However, despite her prima facie rights to the artwork based on the Transfer Documents and the tort-based claims against Pride, that Plaintiff also seeks a declaratory judgment and an order demanding the return of the property raises concerns as to the estate's interest in the litigation sufficient to necessitate joinder. Defendant's argument, again, is that Laine doesn't actually have title to the artwork, and that for joinder purposes this implicates the estate's interest as the potential rightful owner. *See, e .g., Brody v. Village of Port Chester*, 345 F.3d 103, 118-19 (2d Cir. 2003) (noting that a current titleholder would have to be joined if the remedy to plaintiff would be to re-convey the property). Although this argument is insufficient to implicate the narrower probate exception raised by Defendant, it has much greater resonance under the broader Rule 19 principle of the "practical" need to ensure that the litigation does not "impair or impede the person's ability to protect the interest." Fed.R.Civ.P. 19(a)(1)(B)(i).

At the end of the day, what Laine really seeks is to have the artwork declared her property and returned to her, as demonstrated by her demands for such relief. *See* SAC ¶¶ F, G. Although she asserts various torts and a copyright claim, the entire claim is built upon a disputed

13

contract and the primary relief appears to be the performance of that contract, the declaration of her right to the artwork, and delivery of the property to her. This is hardly different than a suit to determine the validity of the contract and a demand for its specific performance; the difference here is that Plaintiff wants to sue in federal court and, without her copyright claim, needs diversity jurisdiction to do so. Whether or not the contract is a valid sale and full transfer of title (or whether it is entirely fraudulent) is a necessary predicate to all of her claims, and a question that should be resolved between Plaintiff and the estate of the artist with whom she made the alleged agreement. Defendant may be able to make identical arguments individually or as the executor, but the simple fact is that the executor of the estate is a separate legal entity. While perhaps unlikely, Defendant for some reason (be it removal or death) might at some point no longer be the executor and the once-identical interests in defending the claim would no longer exist. *See* N.Y. Surr. Ct. Proc. Act § 706 (McKinney 2009) (describing powers of Surrogate Court to appoint successor or administer estate upon death or removal of existing fiduciary).

Additionally, Plaintiff's request for declaratory relief is uncabined and appears to request a judgment that she has rightful title over all others. *See* SAC ¶ F ("Declare Lane to be the rightful owner of the Ely Collection."). This differs from situations where the declaratory judgment is asserted solely against the particular individual, because here the demand for relief by its nature implicates the estate's interest in the property. *Contra Museum of Modern Art v. Schoeps*, 549 F. Supp. 2d 543, 549 ("[W]here a party seeks simply to adjudicate its rights as against a particular claimant but not finally allocate title, it is not necessary to join other claimants."). While this case is not identical to *Brody*, where the undisputed current title holder to the property was not joined, that the disputed title holder is not joined despite Plaintiff's request for a declaration of her right to the property and an order to turn it over is troubling. Notably, Plaintiff fails to address the joinder issue whatsoever in her brief, and provides no argument as to why this action would not practically impede the estate's ability to protect its interest. Plaintiff seeks an unqualified declaration that the property is hers, despite the fact that the other most likely potential owner, the estate, is not currently a participant in the litigation. *Cf. Bartfield v. Murphy*, 578 F. Supp. 2d 638, 651 (S.D.N.Y. 2008) (dismissing plaintiff's declaratory judgment claim because "the requested judgment would directly determine the rights of [the non-joined] party"). As a practical matter, joinder of Defendant as executor is required for the estate to sufficiently protect its interest in the disputed property.

Since joinder of the Defendant as executor is required but is not feasible because it would destroy diversity jurisdiction, the second step in Rule 19 is whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b).  The factors to consider are (1) the extent to which the judgment might prejudice the non-joined party or existing parties (2) the extent to which the prejudice could be lessened or avoided (3) whether the judgment would be adequate and (4) whether the plaintiff would have an adequate remedy if this action were dismissed.  *Id.*  Complete dismissal due to the infeasibility of joining the estate is a fairly drastic step.  "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987).  "Rule 19(b), however, does not require that every factor support the district court's determination." *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, 312 F.3d 82, 88-89 (2d Cir. 2002).

In this case, the lack of a sufficient federal question, the fact that the remainder of Plaintiff's claims rest upon the validity of the contract, and the possibility that the estate and Plaintiff are likely to resolve the right to the artwork in the Surrogate Court suggest dismissal as the appropriate course to follow.  It makes much more sense to allow the Surrogate Court to resolve the primary dispute, and probably the one that motivated the lawsuit, i.e. the validity of the contract and ownership of the artwork.  That question is based entirely on New York law and its resolution will allow this federal action (should Laine choose to re-file) to proceed against Pride in her individual capacity without any concern about the estate's interest.  "Under New York law, the Surrogate's Court has broad jurisdiction to resolve definitely disputes surrounding the affairs of decedents…[it] is well positioned to consider the plaintiff's claims with respect to the [] property in question...." *LoCurto v. LoCurto*, No. 07 Civ. 8238(NRB), 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008).   Finally, because I will dismiss without prejudice, Plaintiff effectively retains an adequate remedy subsequent to dismissal.  Plaintiff may reinstate her claims against Defendant Pride in her individual capacity should it be determined by the Surrogate Court that Ely's art collection is in fact her property.  As such, I find pursuant to

Rule 19 that joinder is required but not feasible, and that dismissal without prejudice is warranted.[2]

## CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is GRANTED for failure to adequately state a copyright infringement claim and for lack of diversity jurisdiction due to the required joinder of the estate. The dismissal is WITHOUT PREJUDICE to ensure that Plaintiff can re-file her federal claim if the contract dispute at the heart of this case is resolved by the New York Surrogate Court in her favor. The Clerk of the Court is instructed to close this case and remove it from my docket.

SO ORDERED
January 15, 2010
New York, New York

_____
U.S.D.J.

---

[2] Since I am compelled to dismiss this case for lack of complete diversity, I need not consider the "probate exception" to federal jurisdiction.

16